UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| VALERIE PEASLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-cv-00430-JDL |
| | ) | |
| REGIS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON REGIS CORPORATION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Regis Corporation has filed a Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b), arguing that there was not clear and convincing evidence of malice or recklessness on its part, and that the jury's award of punitive damages to Valerie Peasley should be vacated as a result. ECF No. 82. Regis also requests a new trial pursuant to Federal Rule of Civil Procedure 59. *Id.* at 6. For the reasons discussed below, I deny the motion.

## I. FACTUAL BACKGROUND

Valerie Peasley is a former hair stylist at a hair salon that was owned and operated by Regis. ECF No. 1. She sued Regis in this court in November 2013, asserting, among other claims, that Regis violated Maine's Whistleblower Protection Act, 26 M.R.S.A. § 831 *et seq.,* by terminating her employment approximately three weeks after she reported to a salon manager that she believed several of her co-workers were using and selling drugs in the workplace, stealing products from the

salon, shoplifting at nearby stores, and trading haircuts for clean urine for purposes of passing urinalysis tests.  ECF No. 1.  Peasley also requested punitive damages.  *Id.*

A three-day trial was held from September 29 to October 1, 2014.  At the close of evidence, Regis moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on all of Peasley's claims.  ECF No. 73 at 156.  Regis made the same argument then as it makes now—i.e., that punitive damages were not appropriate because Peasley failed to establish by clear and convincing evidence that Regis acted with malice or in reckless disregard of her rights.  *Id.*  I took Regis' motion under advisement.  *Id.* at 167.

During the jury charge conference, Regis objected to a jury instruction regarding subordinate bias liability, also known as "cat's paw" liability—i.e., where the retaliatory motives of lower-level employees are imputed to corporate defendants.  ECF No. 73 at 191.  That objection was overruled.  ECF No. 74 at 3.  Regis did not object to a jury instruction regarding punitive damages.  *See* ECF No. 73 at 184-187.  The jury subsequently found in favor of Peasley on her whistleblower retaliation claim and awarded her $80,000.00 in punitive damages.  ECF No. 63.

## II. ANALYSIS

The parties do not dispute that a plaintiff seeking punitive damages must prove malice or recklessness by clear and convincing evidence.  However, Regis contends that Peasley could only satisfy this burden by showing that the malice or recklessness was on the part of its Vice President of Operations, Denise Catalano, the highest-ranking, final decision-maker in the corporate hierarchy to be involved in

Peasley's termination. ECF No. 82 at 5 ("there is no evidence—let alone clear and convincing evidence—that Denise Catalano had an improper motive when she decided to terminate Plaintiff's employment[.]"). Regis has not identified any supporting authority for this argument, *see id.*, and I am not persuaded that only a showing of malice or recklessness on the part of the final decision-maker will suffice for an award of punitive damages. Although the nominal authority to terminate Peasley's employment may have resided with Catalano, the jury nevertheless heard extensive testimony about the actions of Robert Davis, another high-ranking Regis executive and Catalano's subordinate, and could have reasonably concluded that he acted with reckless disregard for Peasley's rights.

Davis was a Regional Director for Regis with responsibility for all of New England and Canada. ECF No. 73 at 127. During 2013, when the events at issue in this case occurred, Davis oversaw 86 Regis salons and was responsible for at least 1,200 employees. *Id.* at 127, 150. Davis testified that he knew about and was "very" concerned by Peasley's allegations of drug use and drug dealing by other Regis stylists, *id.* at 139, 142, and directed his subordinate, Area Supervisor Carol Bryant, to investigate Peasley's claims, *id.* at 143. Approximately three weeks later, Bryant proposed terminating Peasley for undercharging a customer whom she provided with a free highlight service. *Id.* at 90-91. Bryant told Davis that Peasley claimed she was merely performing a "re-do" of a previous service for an unsatisfied customer. *Id.* Davis admitted that providing a "re-do" service was "a different situation" than undercharging a client, *id.* at 134, and admitted that he did not know whether Regis

had a written policy that required a stylist to obtain a salon manager's approval before providing a "re-do" service, *id.* at 136. Davis did not know whether there was a written policy requiring stylists to enter "re-dos" into Regis' computer system, *id.*, and did not know whether Peasley or other stylists had been trained to enter such transactions into the computer system, *id.* at 137. Nevertheless, Davis told Catalano that he had proof that Peasley had undercharged a customer, and did not tell her that Peasley claimed it was a "re-do." *Id.* at 133-34.

Viewed in the light most favorable to the jury's verdict, the evidence establishes that Denise Catalano would not have authorized Peasley's termination if Davis had not sought the same. The conclusion that punitive damages may be awarded under these circumstances is supported by *Kopenga v. Davric Me. Corp.*, 1999 ME 65, 727 A.2d 906, which Regis cites to argue that Maine does not allow punitive damages where cat's paw liability is concerned. ECF No. 82 at 6. In *Kopenga*, a trial court awarded punitive damages to the plaintiff for the discriminatory behavior of a lower-level supervisor. *Kopenga,* 1999 ME 65, ¶ 9, 727 A.2d 906. The Law Court reversed the award, citing two federal appeals court cases which required that a corporate employee must be part of the company's "upper management" in order for their conduct to be the basis for punitive damages. *Id.* at ¶¶ 21, 22 (citing *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 944 (5th Cir. 1996)). At the very least, "upper management [must] be aware of the discriminatory acts before punitive damages can be levied against a corporate employee." *Id.* at ¶ 22 (citing *Patterson*,

4

90 F.3d at 944). The *Kopenga* Court noted that the discriminating employee was not "a member of corporate management," and that there was "nothing in the record to show that . . . [the defendant corporation] had or should have had any knowledge of [the discriminating employee's] conduct, or that it somehow authorized, ratified, or approved it." *Id.* at ¶ 25.

Applying the rationale of *Kopenga* to this case,[1] I conclude Davis was a member of "upper management" at Regis. The jury could have rationally concluded from Davis' and Bryant's testimony, summarized above, that Davis acted with reckless disregard for Peasley's rights weeks after she reported what she believed to be numerous violations of law taking place within a Regis salon. Because Davis was sufficiently high-ranking in the Regis corporate hierarchy, his recklessness may be imputed to Regis.

### III. CONCLUSION

For the preceding reasons, Regis' Renewed Motion for Judgment as a Matter of Law (ECF No. 82) is **DENIED.** Regis presented no argument to support its request for a new trial pursuant to Rule 59. That request is also **DENIED.**

SO ORDERED.

This 30th day of April 2015.

/s/ Jon D. Levy
U.S. District Judge

---

[1] Because *Kopenga* is binding precedent on a question of state law, I do not address the question raised by Peasley regarding whether the Law Court, if it were to reconsider the issue of punitive damages against a corporation in an employment context pursuant to the Maine Human Rights Act, would adopt the Title VII framework set out by the United States Supreme Court in *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999), several months after *Kopenga* was decided.